LAPHAM v. OAKLAND CIRCUIT JUDGE.

1. MANDAMUS — CONDITIONS PRECEDENT — SAVING QUESTIONS FOR REVIEW—MOTIONS.

Mandamus to set aside an order of the court, refusing the relief asked, will lie without a second application to vacate the order made: it is only in cases wherein the court has not passed on the relief asked or questions presented, as where the opposing party has obtained some order, that an application to vacate must precede the filing of a petition for mandamus.

**2.** EXECUTION — SUPERSEDEAS — CAPIAS AD SATISFACIENDUM —
STATUTES — BODY EXECUTION — RECALL — CAUSE FOR DELAYED
ISSUANCE.

Good cause for four months' delay in issuing a body execution
after return of a property execution unsatisfied was shown,
within the judicial discretion of the lower court, by plaintiff,
who alleged that defendant's attorneys frequently assured
him their client would settle, and negotiations for a compro-
mise were pending.   3 Comp. Laws, §§ 10412, 10413.

Mandamus by Floyd Lapham against George W. Smith,
Oakland circuit judge, to compel respondent to grant an
application for the discharge of relator from custody under
a body execution.    Submitted April 16, 1912.   (Calendar
No. 25,043.)    Writ denied May 31, 1912.

*William T. Hosner,* for relator.

*Pelton & McGree,* for respondent.

STEERE, J.   On April 14, 1911, one Avery C. Garfield
recovered from relator, Floyd Lapham, a judgment of
$1,000 in an action for injuries received in the operation
of a corn husker owned by said relator.   On August 18th
thereafter said Garfield caused to be issued an execution
upon said judgment against the goods, chattels, and real
estate of petitioner, which was returned unsatisfied Sep-
tember 19th following, the return day being September
18th.   More than three months after such return, on
January 15, 1912, a body execution was issued in said
cause against relator, at the instance of said Garfield, by
virtue of which process he was apprehended and confined
in the county jail of Oakland county, where he still re-
mains in custody.   Claiming that his arrest was illegal
for the reason that more than three months had elapsed
between the return day of the property execution and the
issuance of a *capias ad satisfaciendum,* relator made
application in the circuit court of Oakland county for his
discharge.    Said application was heard and denied on
February 19, 1912, the circuit judge holding that good cause

for such denial was shown by proof of certain overtures and negotiations between attorneys for the parties touching the filing of a bond or a compromise and settlement of said suit, which, in the opinion of the court, excused and justified the delay now urged against the relator's imprisonment.  In response to the order to show cause why a writ of mandamus should not issue, the circuit judge returns and certifies the proceedings had before him, consisting of a petition filed by relator asking for his discharge, certain affidavits, letters, and oral testimony taken at the hearing bearing upon what is claimed to be "good cause shown," and the order denying relator's petition for a supersedeas.

The record shows that between the return day of the property execution, September 18, 1911, and the expiration of three months, which would be on December 18, 1911, negotiations were pending between the parties for a settlement, conducted by their attorneys, and numerous conversations were had touching such settlement or filing a bond and settling a bill of exception.  Numerous letters were exchanged.  Portions of those written by relator's counsel are as follows:

"August 30, 1911.  I will get Lapham over to Pontiac some day next week and do all I can to bring about a compromise upon terms satisfactory to all parties."

"October 9, 1911.  I am now getting ready to try a will case which will take about two weeks of my time, and will then be able to take up with you the matter of adjustment of the Lapham matter.  I am satisfied we can come to some amicable adjustment of this matter if both parties are willing to do what is reasonable and right. and I will certainly insist that my man take this position."

At the hearing of this matter before the circuit judge, it was the contention of Garfield's attorneys, based on the testimony introduced, that body execution would have issued against relator forthwith on return of the property execution but for these assurances and negotiations, which were pending until about January 5, 1912, at which time relator's counsel informed them nothing further could be

done looking to a settlement, after which the capias in question was promptly issued. That such negotiations were pending during this time is practically undisputed, but there is some conflict of testimony as to their extent and nature. The record fails to disclose that application was subsequently made by relator to the circuit judge to vacate the order complained of, and it is urged that mandamus will not lie until this is done.

It is further contended that under section 10413, 3 Comp. Laws, the question of whether or not petitioner was entitled to a supersedeas became, under the showing made, a matter within the discretion of the circuit judge depending upon whether or not he found that good cause had been shown for not taking out body execution within three months after return day of the property execution. Said section in part is as follows:

" If any plaintiff shall neglect so to charge any defendant in execution, as required by the last two preceding sections, such defendant may be discharged from custody by a supersedeas, to be allowed by any judge of the court in which such judgment shall have been obtained, *unless good cause to the contrary be shown.*"

Relator relies upon preceding section 10412 which provides:

" When any defendant shall be in custody upon a surrender in discharge of his bail, made after a judgment against him, and such bail shall be thereupon exonerated, the plaintiff in such judgment shall charge such defendant in execution thereon, within three months after such surrender, or if an execution against the property of such defendant shall have been issued, *within three months* after the return day of such execution."

It being undisputed that more than three months intervened between the return of the property execution and issuance of the body execution, it is manifest that relator was entitled to be discharged out of custody by supersedeas unless " good cause to the contrary " was shown, or unless counsel are right in their contention that relator is

not entitled to mandamus because no application was made to the circuit judge to vacate the order which it is now sought to compel him to vacate.

In support of the latter contention, counsel cite and rely on *Hitchcock* v. *Wayne Circuit Judge*, 97 Mich. 614 (57 N. W. 189); *Freud* v. *Wayne Circuit Judge*, 131 Mich. 606 (92 N. W. 109); *Aitken* v. *Chippewa Circuit Judge*, 146 Mich. 129 (109 N. W. 223).

In *Hitchcock* v. *Wayne Circuit Judge* an order setting aside a judgment previously rendered in relator's favor had been granted on motion of defendant. In *Freud* v. *Wayne Circuit Judge* relator sought to have vacated an order for a change of venue granted on application of the opposite party. In *Aitken* v. *Chippewa Circuit Judge* a motion to set aside an order *pro confesso* in a chancery suit in which relator was complainant had been granted on application of defendant.

In each of those cases affirmative relief was granted to, and on initiative of, the opposite party. It was therefore held that before mandamus would lie, proper practice required that an application to vacate should be made directly to, and refused by, the court which made the order complained of. This rule is based on the underlying principle that a prerequisite to mandamus is a showing that there was a proper request or demand by relator for the performance of a duty sought to to be enforced and a direct refusal thereof. In those cases that condition of affairs did not yet exist. In the case at bar it does. Relator was the moving party and made direct application to the court for the performance of an alleged duty which it is now sought to enforce, and on a full hearing the same was refused. Repeated applications to that court could not present the question more pointedly or squarely. The only order made by the court was a denial or refusal to grant the relief asked. Repeated applications and repeated denials would be idle and in the end leave the case as it now is except in event the judge might finally grant relator's request lest with continual coming he

weary him.  The rule invoked does not require a second application to be made where the point has been once squarely presented to the court and the request directly made and refused.

Was good cause shown to the contrary for not granting relator's application for a supersedeas?  In *Douglass* v. *Manistee Circuit Judge*, 42 Mich. 495 (4 N. W. 225), where an application similar to this was made, the good cause urged as an excuse for delay was the removal of the case to the Supreme Court by writ of error.  It was there said:

"We think no sufficient cause was shown in this case to prevent his discharge.  Notwithstanding the removal of the case to this court on writ of error, no bond having been filed by the plaintiff in error to stay the proceedings, the plaintiffs were at liberty to proceed in the usual manner and collect their judgment.  No reason is alleged why this was not done."

In *Metcalf* v. *Moore*, 128 Mich. 138 (87 N. W. 129), this court sustained the circuit judge in granting a supersedeas and in holding that pendency of chancery proceedings was not an excuse for delay.

Both of those cases turned on questions of law; it being held that other legal proceedings, which in no way precluded issuing a body warrant, are not good cause for delay.  The pendency of legal proceedings urged in those cases is the antithesis of overtures and negotiations for settlement.  In those cases the plaintiffs were, as a matter of law, at liberty to proceed in the usual manner and collect their judgments, and no other reasons were alleged, and no other showing was made why this was not done. Here we have a showing of pending negotiations and assurances from which a settlement might be anticipated involving questions of fact.

The provisions of our statute touching body executions follow to some extent and preserve the essence of old English rules of practice, prescribing methods of procedure, and prohibiting unreasonable delay, in attempting to col-

lect a judgment by imprisonment for debt. An early rule in the exchequer providing in detail the course of procedure in certain cases says, among other things:

"In case of a surrender in discharge of bail, after final judgment obtained, unless the plaintiff shall proceed to cause the defendant to be charged in execution upon the said judgment within two terms next after such surrender, and due notice thereof, * * * the prisoner shall be discharged out of custody by *supersedeas*, unless, upon notice given to the plaintiff's attorney or clerk in court, good cause shall be shown * * * to the contrary." 1 Tidd's Practice, p. 363.

In *Walter* v. *Stewart*, 3 Wilson K. B. 455, where there was a treaty for an accommodation resulting in an agreement between the parties for a settlement and compromise of the matters in difference, which caused delay beyond the legal time for declaring against defendant in custody of the warden of the fleet, it was said:

*Per Curiam:* "It is for the benefit of prisoners that plaintiffs will listen to proposals of accommodation, but no plaintiff would listen to such proposals, if prisoners should thereby become supersedable; the defendant himself hath been the occasion of the plaintiff's not declaring within the time limited by the rules and practice of the court, and therefore the rule to show cause why a *supersedeas* should not issue must be discharged."

In the case at bar the court found, as a matter of fact, that defendant was the occasion of plaintiff not proceeding with the harsher remedy at his command within the time set by statute. The expression "good cause," found in the statute, is so general and elastic in its import that we cannot presume any legislative intent beyond opening the door for the court to exercise its best judgment and discretion in determining if conditions exist which excuse the delay when special circumstances are proven to that end.

Where it was provided by code that no action should be brought upon a judgment except in certain cases, without leave of the judge of the court "for good cause

shown," it was held that what is good cause is a question exclusively within the discretion of the judge to whom the application is made. *Kendall* v. *Briley*, 86 N. C. 56. Under similar statutory provisions it has also been held that the powers of the court, touching application for a supersedeas, are discretionary and the same may be denied when it appears that the adverse party has shown sufficient reason for delaying beyond the time fixed by statute for issuing execution. *De Silva* v. *Holden*, 11 N. Y. Civ. Proc. 404; *Longuemare* v. *Nichols*, 7 N. Y. Supp. 157.

The affidavits and testimony presented disclosed to the court facts and circumstances in controversy moving it to act and exercise its discretion. After considering the affidavits and oral testimony offered and arguments of counsel, the court said:

" Nevertheless, I am clearly satisfied that the talk of filing a bond, and the talk of getting the parties together for a settlement, did actually mislead the attorneys for plaintiff "—and denied the petition.

Under the circumstances of this case, the question was within the discretion of the circuit judge, and we are not prepared to hold that there was an abuse of such discretion.

The writ is therefore denied.

MOORE, C. J., and McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BLAIR and BIRD, JJ., did not sit.